UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RICHARD RYAN,

        Plaintiff,

vs.                                         **COMPLAINT**

Superintendent EARL BELL, Deputy Superintendent     9:20-cv-602 (GLS/DJS)
THEODORE C. ZERNIAK, GREGORY T. KING, Yard
Sergeant, SGT. DANIEL J. BOMBADIER, O.R.C. Proloux,

        Defendants.

------------------------------------------------------x

    NOW COMES RICHARD RYAN, and as and for his Complaint, alleges and avers as follows:

## I. **PARTIES**

    1.  Plaintiff Richard Ryan is an inmate currently incarcerated at the Elmira Correctional Facility.  He is an adult, of legal age, and brings this action on his own behalf.

    2.  Defendants are each sued in their individual capacities for actions and omissions they took under color of state law.  Superintendent Earl Bell was in charge of Clinton C.F. on June 11, 2019 and charged with the care and custody of plaintiff and other wards of the state.  Defendant Deputy Superintendent Theodore C. Zerniak was in charge of safety and security at

1

Clinton C.F. on June 11, 2019. Defendant Sgt. Gregory King was in charge of the North Yard at the time the events hereinafter described developed and was in direct command of the response thereto. After consultation with defendant King, defendant Sgt. Daniel J. Bombadier gave the order to corrections officers stationed in the North Yard to abandon that area and to lock down the gates, trapping the plaintiff and like-situated targets inside. At all times relevant hereto, defendant Proloux was a counselor to whom plaintiff was assigned.

II. **JURISDICTION**

3. As plaintiff alleges that through their actions and omissions, defendants violated rights accorded him by the Eighth Amendment to the United States Constitution, and as he has exhausted his administrative remedies and fulfilled all jurisdictional requirements, this Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. secs. 1331 and 1343 and 42 U.S.C. secs 1983 and 1988.

4. Specifically, plaintiff grieved timely, alleging he was attacked and injured in the yard on June 11, 2019 and that staff did not come to his aid and instead abandoned the yard, allowing him to be severely injured. Plaintiff also noted in his grievance that he and his fiancé had provided prior notice to defendant Proloux of the threats made by Blood gang members against his person and that this defendant had taken no action to protect him.

5. On August 2, 2019, the superintendent's designee denied plaintiff's grievance without responding to his claim that he was abandoned while being

attacked in the yard and without responding to his claim that he and his fiancé had provided notice of the specific threats to his person from members of the Blood gang.

III. **STATEMENT OF FACTS**

6.  On June 11, 2019, plaintiff was an inmate housed in General Population at the Clinton Correctional Facility.

7.  Between 4:30 and 5 pm on that date, while plaintiff was in the North or Main Yard and during the recreation go back, 346 inmates were in the north yard and approximately 192 inmates were on the flats of that yard where plaintiff was situated.

8.  At about 4:40 p.m., several members of the Bloods attacked a white inmate, hitting him with a garbage can and slashing him.

9.  Plaintiff sought to assist the white inmate as approximately 40 guards were then abandoning their posts in and around the yard and failed to intervene to stop this attack.

10.  According to an Inmate Misbehavior report prepared by defendant Sgt. W. LeClair against plaintiff, "yard staff were required to retreat from the yard for their safety resulting in several minutes the yard was out of control until it was taken back by staff."

11.  While said report falsely stated the duration of their abandonment, it does acknowledge that assigned officers were ordered to retreat from the yard, allowing the year to remain "out of control."

12.  Said order to retreat was given by defendant Sgt. Bombadier after consultation with defendant Sgt. King, then the yard commander.

13.  Defendants Bell, as superintendent of the facility, and defendant Zerniak, as Deputy Superintendent for Security, delegated authority to make such an order to the sergeants in operational control of the yard.

14.  However, both were notified of the order and neither counter-manded it, an action withing their respective authorities.

15.  Under facility protocol, decisions to withdraw corrections officers from the scene of a fight, thus risking serious injury and death to inmates, must be approved by the Deputy of Security and the Superintendent, her defendants Zerniak and Bell.

16.  After the ordered retreat of corrections officers, Blood gang members attacked plaintiff, rendering him unconscious and several began using deadly physical force against him.

17.  Specifically, inmates with razors and scalpels were slitting plaintiff's throat.

18.  As these events transpired, under the direction of defendants Bombadier and King, as sanctioned by their superiors, defendants Zerniak and

4

bell, Corrections Officers, each of whom had been trained to intervene in such situations and each of whom had by then abandoned his/her post and locked the gate to the Yard, failed to take any effectual action to save plaintiff's life.

19.  Instead, from a safe distance, Office Provost used a state-issued gas gun to hire one long range projectile into the yard, but this did not quell the melee.

20.  Likewise, yard tower officer J. Ormsby, using a state-issued gas gun, fired on long range projectile into the yard with no desired effect achieved as he observed inmates continue to fight.

21.  Likewise, yard tower officer McShane, using a state-issued gas gun, fired on long range projectile into the yard with no desired effect achieved as he observed inmates continue to fight.

22.  Likewise, yard tower officer Stone, using a state-issued gas gun, fired on long range projectile into the yard with no desired effect achieved as he observed inmates continue to fight.

23.  Likewise, yard tower officer K. Wood, using a state-issued gas gun, fired on long range projectile into the yard with no desired effect achieved as he observed inmates continue to fight.

24.  Deputy defendant Zerniak observed said ineffectual responses and concluded that the wind in the north yard made the chemical agents

ineffective; as the projectiles hit the ground, the gas dispersed away from the incident.

25. Despite this observed ineffectualness, defendants did not change their tactics.

26. Yard tower officer Provost, using a state-issued gas gun, fired six additional long-range projectiles and three short range projectiles into the yard with no desired effect achieved as he observed inmates continue to fight.

27. Likewise, yard tower officer K. Wood, using a state-issued gas gun, fired two more long range projectiles into the yard with no desired effect achieved as he observed inmates continue to fight.

28. Likewise, yard tower officer McShane, using a state-issued gas gun, fired one more long-range projectile into the yard with no desired effect achieved as he observed inmates continue to fight.

29. Likewise, yard tower officer Stone, using a state-issued gas gun, fired two more long-range and one short-range projectile into the yard with no desired effect achieved as he observed inmates continue to fight.

30. Likewise, yard tower officer Ornsby, using a state-issued gas gun, fired one more long-range and one short-range projectile into the yard with no desired effect achieved as he observed inmates continue to fight.

31. Before defendants abandoned their responsibility to protect plaintiff and like-situated victims of this violence and employing the ineffectual strategy

described above, Cos under their command were not being attacked by any of the inmates.

32.   From their positions outside the yard, defendants' agents failed to promptly and timely employ any effectual measure to quell the fighting.

33.   As defendants caused the cited ineffective response and failed to properly subdue the violence in the yard, plaintiff sustained injuries to his face and body requiring 90 stitches.

34.   During the attack upon him, plaintiff also sustained a broken nose and his skull was dented.

35.   According to official reports, following the assault upon him, medical staff reported multiple lacerations to plaintiff's face and head area, swelling to both eyes, a laceration to his right hip and right shoulder and multiple lacerations to his upper torso.

36.   Plaintiff was transported to Champlain Valley Physicians Hospital via ambulance for further treatment.

37.   After the inmates stopped fighting, staff re-entered the yard and escorted some 192 inmates to the gym, the medical unit and to various blocs.

38.   Following the fight, all staff involved in this response were directed to see medical and none reported any injury, and each remained on duty.

39.   During the weeks before plaintiff was injured on June 11, 2019, plaintiff's fiancé had called the Clinton Correctional Facility on several

7

occasions and spoken with staff, including plaintiff's O.R.C. counselor Proloux, and warned them about threats from Blood members on his life.

40. Defendant Proloux had a responsibility and duty to report these threats to the Deputy Superintendent of Security and, upon information and belief, failed to do so.

41. Before plaintiff was so attacked on June 11, 2019, he himself warned defendant Proloux and other staff at Clinton C.F. that his life was in danger and that Bloods had threatened him with deadly physical force.

42. Defendant Proloux and other staff members had a responsibility and duty to report these threats to the Deputy Superintendent of Security, and upon information and belief, failed to do so.

43. The warnings plaintiff and his fiancé, Patricia Erbe, provided did not cause defendant decision-makers to lock down the facility or to conduct a facility-wide search for weapons.

44. During the attacks by Blood Gang members on June 11, 2019, they deployed weapons including a 3 ¼" by ¾" wide glass cutting type weapon with a tape handle, a glass shank type weapon with a cloth and tape handle measuring 5 ¾" long by 1 ¾" wide, each of which was found in the yard following the attack on plaintiff.

45. Following seizure of control of the North Yard, Correction Officers found at least three other weapons in the yard.

46. Despite ongoing racial tensions at Clinton C.F. and the reports made by plaintiff and his fiancé of threats of violence directed at plaintiff, before the attack on June 11, 2019, he was not placed in protective custody or offered any such placement.

47. Apart from the physical injuries and severe permanent scaring these injuries caused him, the reckless disregard for plaintiff's life displayed by the defendants, jointly and severally, has caused him severe emotional distress.

IV. **CAUSES OF ACTION**

48. Plaintiff incorporates paras. 1-47 as if fully restated herein.

49. By ordering or sanctioning the order given to Correction Officers to withdraw from their posts in the yard thereby abandoning plaintiff on June 11, 2019 while he was being attacked, defendants Bell, Derziak, King and bombardier violated the Eighth Amendment to the United States Constitution and exhibited deliberate indifference to his security and safety needs.

50. By ignoring the warnings provided by plaintiff and his fiancé as to the threats posed by members of the Bloods, defendant Proloux exhibited deliberate indifference to the security needs of the plaintiff, creating an extremely high probability that he would be attacked, as he was, and suffer severe injured.

## V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Honorable Court award him compensatory damages and attorney' fees and costs arising from defendants' violation of his Eighth Amendment rights and enter any other order which the interests of justice and equity require.

Dated: June 1, 2020

Respectfully submitted,

MICHAEL H. SUSSMAN

SUSSMAN & ASSOCIATES
PO BOX 1005
GOSHEN, NEW YORK 10924
(845)-294-3991
Sussman1@frontiernet.net
Counsel for Plaintiff