UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD RYAN,

            Plaintiff,

v.                                                                                                    9:20-CV-0602
                                                                                                      (GTS/DJS)

JONATHAN PROULX,

            Defendant.
_____

APPEARANCES:                                                               OF COUNSEL:

SUSSMAN & ASSOCIATES                                          MICHAEL H. SUSSMAN, ESQ.
  Counsel for Plaintiff
P.O. Box 1005
Goshen, NY 10924

HON. LETITIA A. JAMES                                              ERIN P. MEAD, ESQ.
Attorney General for the State of New York            BRITTANY M. HANER, ESQ.
  Counsel for Defendant                                            Assistant Attorney Generals
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      The above-captioned prisoner civil right action, previously reassigned to the undersigned from Senior U.S. District Judge Gary L. Sharpe, came before the Court for a Final Pretrial Conference on February 4, 2015. (Text Minute Entry filed Feb. 4, 2025.) During that conference, the Court identified what it perceived to be an issue that had been presented by Defendants' prior motion for summary judgment of September 12, 2022 (Dkt. No. 37) but not

1

decided by Judge Sharpe's Decision and Order of January 3, 2024 (Dkt. No. 44).

Specifically, the Court perceived Defendants' prior motion for summary judgment as sufficiently arguing that (1) Plaintiff was the aggressor during the incident that occurred in the yard on June 11, 2019,[1] and (2) Plaintiff never articulated to Defendant Proulx the specific safety concern that actually occurred in the yard (i.e., that, if the Bloods gang attacked an associate of Plaintiff's, then Plaintiff would have to come to that associate's aid).[2]  Rather than address this specific argument, Judge Sharpe's decision found that a genuine dispute of material fact existed regarding whether Defendant Proulx was aware that Plaintiff faced a substantial risk of serious danger for purposes of a deliberate-indifference-to-security-needs claim under the Eighth Amendment.  (Dkt. No. 44, at 10-11.)

Not wanting to unnecessarily summon a jury, the Court invited counsel to brief their positions on the issue perceived by the Court (Text Minute Entry filed Feb. 4, 2025), and advised

---

[1] The Court notes that, in Defendants' prior motion for summary judgment, Defendants King and Bombadier argued as follows: "Plaintiff's own undisputed testimony indicates that he impulsively ran towards the melee, and inserted himself into the donnybrook to assist an 'associate' of his who was being attacked. . . .  Plaintiff alleges that while he was assisting this individual, he was surrounded and attacked by multiple incarcerated individuals. . . . Plaintiff fought back by throwing punches at incarcerated individuals. . . ." (Dkt. No. 37, Attach. 1, at 11 [page "9" of Defs.' Memo. of Law] [record citations omitted].)  Indeed, Defendants' Statement of Fact Numbers 46 and 47 asserted as follows: "Plaintiff impulsively ran towards the melee to assist an 'associate' of his who was being attacked. See Ryan Dep. 60:14-61:2; 62:8-11; 62:21-63:3. Plaintiff alleges that while he was assisting this individual, he was surrounded and attacked by multiple incarcerated individuals. See Ryan Dep. 59:14-19; 60:6-20." (Dkt. No. 37, Attach. 2, at ¶¶ 46-47 [Defs.' Rule 56.1 Statement].)

[2] The Court notes that, in Defendants' prior motion for summary judgment, Defendant Proulx argued, "At no time prior to June 11, 2019 did the Plaintiff articulate any specific safety concern to Proulx such that Proulx could foresee *the incident that occurred* on June 11, 2019."  (Dkt. No. 37, Attach. 1, at 6 [page "4" of Defs.' Memo. of Law, citing Paragraph 24 of Proulx Decl., which states that, "At no time prior to June 11, 2019, did the Plaintiff articulate to me a specific safety concern"] [emphasis added].)

counsel of the portions of the record and cases that might preclude Plaintiff's claim against Defendant Proulx (Text Notice filed Feb. 4, 2025). On February 5, 2025, Plaintiff filed his brief on the issue. (Dkt. No. 76.) Later that day, Defendant filed his brief on the issue. (Dkt. No. 77.)

In both of their briefs, counsel asserted that this issue was not sufficiently raised and/or briefed in Defendants' prior motion for summary judgment. (Dkt. No. 76, at 2 [Plf.'s Brief, arguing, "At no time did any defendant submit that he was entitled to summary judgment because Ryan had initiated the fight in the prison yard. Proulx moved on the disputed ground that he had no duty to initiate protective custody for plaintiff because plaintiff had told him he did not want such protection"]; Dkt. No. 77, at 1 [Def.'s Brief, arguing, "Defendant concedes that in moving for summary judgment on Defendant Proulx's behalf, dismissal was not sought for lack of causation. . . . Thus, the issue has not yet been addressed by the Court."].)

However, counsel disputed whether Plaintiff's injuries would have occurred if he had not sought to assist a white inmate who was being attacked. (*Compare* Dkt. No. 76, at 7 [Plf.'s Brief, arguing that, "once in the yard, his injury was highly probable since the correctional facility placed the yard on lockdown for several minutes during an active riot involving numerous inmates"] *with* Dkt. No. 77, at 7 [Def.'s Brief, arguing that "it is not 'highly probable' that if plaintiff stood down . . . he would have been injured"].)

Under the circumstances, regardless of whether the Court were to *sua sponte* reopen briefing on Defendants' motion for summary judgment (and reconsider Judge Sharpe's Decision and Order of September 12, 2022), or *sua sponte* extend the deadline for a renewed motion for summary judgment under Fed. R. Civ. P. 16(b)(4), the Court would, and does, find that notice and a reasonable time to respond is required by Fed. R. Civ. P. 56(f).

3

As a result, the parties are hereby notified that the Court is considering entering judgment as a matter of law in favor of Defendant Proulx on Plaintiff's Eighth Amendment failure-to-protect claim against him because, based on the available record evidence, no reasonable jury could find that Defendant Proulx's actions (or inactions) were the proximate cause of the injuries sustained by Plaintiff.[3]

More specifically, the parties are also hereby notified of the Court's tentative findings of fact and conclusions of law.

It appears undisputed that Plaintiff joined the fight voluntarily and was not the victim of an unprovoked attack in the yard on June 11, 2019. (*See* Dkt. No. 1, at ¶¶ 8-9 [Plf.'s Compl., alleging, "At about 4:40 p.m., several members of the Bloods attacked a white inmate, hitting him with a garbage can and slashing him. Plaintiff sought to assist the white inmate as approximately 40 guards were then abandoning their posts in and around the yard and failed to intervene to stop the attack."]; Dkt. No. 39, Attach. 3, at 61 [Ryan Depo. Tr., stating, "Q. Do you recall witnessing another white inmate being assaulted by black inmates and then you attempting to help that inmate? A. Yes. Yeah, I -- yeah. I remember seeing -- I thought somebody -- I thought they were going to kill him because they were hitting him with a garbage can. They --

---

[3] *See* Kevin F. O'Malley, Jay E. Grenig & William C. Lee, 3B *Federal Jury Practice and Instructions* § 165.20 Essential Elements of Plaintiff's Claim: Generally (6th ed. West 2025) (listing the third element of a claim under 42 U.S.C. § 1983 as that the "officers' acts were the proximate cause of damages sustained by plaintiff"); *Burton v. Lynch*, 664 F. Supp.2d 349, 361 n. 17 (S.D.N.Y.2009) ("To find a defendant liable in a § 1983 action, the defendant must be the proximate cause of the constitutional violation alleged. This entails that a plaintiff must allege facts which, if taken as true, would demonstrate that the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct.") (internal citations omitted); *see, e.g., Justin R. ex rel. O'Toole v. Bloise*, 06-CV-6228, 2011 WL 4684359, at *7 (S.D.N.Y. Oct. 5, 2011) ("[T]he Court finds that there are no facts in the record to support the causation element of Plaintiff's § 1983 claim[] for failure to protect . . . .").

they hit him with a big iron can, and my first instinct was to help him. Q. And how did you help that inmate? A. I kind of just ran at the guy. I can't remember much after that, but I remember running after a guy with -- he was about to hit him with a garbage can -- or hit him with a garbage can. And I was terrified that day, so I just kind of went on instinct there. Q. Do you – A. That's all. Q. -- recall striking that inmate either with a punch, kick, or other strike? A. Yeah, I'm sure that I threw some punches. Yeah. Q. And do you recall engaging physically with any other inmates other than this inmate with the garbage can? A. After that I was surrounded and jumped on so I don't -- I -- I· can't recall because I know I was knocked unconscious pretty soon after that. I know I was unconscious, woke up, went back to sleep in the -- in in medical."].)

It appears that joining a fight is at the very least a factor weighing in favor of being found to be the aggressor for purposes of a failure-to-protect claim. *See Chadwick v. Mondoux*, 05-CV-0975, 2007 WL 2891655, at *6 (N.D.N.Y. Sept. 28, 2007) (Sharpe, J.) (finding that plaintiff was "the aggressor," so as to preclude his failure-to-protect claim under the Eighth Amendment, because "[t]he May 22, 2005 altercation did not involve plaintiff until he joined the fight when he saw inmate Adams being kicked. Thus, plaintiff was an aggressor during the first altercation, and Mondoux could certainly not have been aware of any 'risk' to plaintiff at that time").

Moreover, it appears that purportedly having to launch a preemptive attack as defensive measure does not render oneself a victim for purposes of a failure-to-protect claim. *See Easley v. Loverme*, 18-CV-6326, 2020 WL 2557809, at *2, 9 (W.D.N.Y. May 20, 2020) (finding that plaintiff was "the aggressor" during the incident that occurred on October 30, 2017, so as to preclude his failure-to-protect claim under the Eighth Amendment, because "the Complaint clearly indicates that it was Plaintiff who attacked Kamholtz at the A.A. meeting. In this regard,

the written statement by Jail Administrator Crowell, which is attached to the Complaint, refers to an admission by Plaintiff that he made a preemptive attack against Kamholtz because he felt outnumbered [by opposing gang members]").

Granted, it appears that Plaintiff's act of aggression might not have served as a superseding cause of his injuries if those injuries were *inevitable* that day.  *See House v. City of New York*, 18-CV-6693, 2020 WL 6891830, at *14 (S.D.N.Y. Nov. 24, 2020) ("[O]n one view of the facts, an attack would not have come about had House not thrown the first punch, hitting A.R. in the face. . . . But viewing the facts in the light most favorable to House as the non-movant, as the Court must, *the inference is viable that, had he not thrown the first punch, House would still have been attacked and suffered comparable injuries within the period when Seepaul was away from his post*. Notably too, the inmates who attacked House, P.M. and D.J., had not been struck by House. House struck A.R. who, House testified, had been 'aggressively' advancing on him. A reasonable jury could view the other inmates' intercession as consistent with a preexisting intention to join A.R. in jumping House.") (emphasis added).

Furthermore, here, it appears, at least at first glance, that admissible record evidence exists that Plaintiff's injuries might have been inevitable.  More specifically, evidence exists that the fight encompassed "the whole yard."  (*See* Dkt. No. 39, Attach. 3, at 59 [Ryan Depo. Tr., stating, "Q. So how did – how did the riot begin, do you know? A. I believe somebody was cut on the way inside the facility and then they started fighting. And then it just escalated. I mean, I wasn't near the cutting exactly, but it just so happened where *the whole yard got involved in it.*") (emphasis added).

However, on closer examination, it appears that Plaintiff's "whole yard" testimony was

mere hyperbole, being inconsistent with his factual allegations and more-precise testimony on the subject,[4] and being wholly unsubstantiated by the undisputed record evidence establishing that only 45 to 60 inmates were involved in the fight.[5]  As a result, this testimony of Plaintiff's may be disregarded under Local Rule 56.1 of the District's Local Rules of Practice or alternatively under *Jeffreys*.[6]

---

[4]   (*See* Dkt. No. 1, at ¶ 7 [Plf.'s Compl., alleging that there were "346 inmates in the north yard and [only] approximately 192 inmates . . . on the flats of that yard where plaintiff was situated" and the fight occurred]; *cf.* Dkt. No. 39, Attach. 3, at 57, 59, 60 [pages "56," "58" and "59" of Plf.'s Depo. Tr., testifying that "there had to be a couple of hundred [inmates in the yard at the time] at least," that "I would estimate [there were] hundreds of [members of the Bloods gang present]," that there were only "[m]aybe thirty, forty" white inmates present in the yard at the time, and that "I . . . [saw] about thirty people fighting in a mass group"].)

[5]   (Dkt. No. 39, at ¶ 25 [Plf.'s Rule 56.1 Response, admitting that "[a]t approximately 4:40 p.m. on June 11, 2019 at Clinton, there were approximately 346 incarcerated individuals in the North Yard (the 'yard') when a fight broke out between incarcerated individuals, eventually erupting into a brawl involving 45-60 incarcerated individuals"]; *see also* Dkt. No. 37, Attach. 3, at 110 [Ex. B. to Baddam Decl., attaching Unusual Incident Report, stating that "there were 436 inmates in the north yard at the time of the incident," "a total of 192 inmates were on the flats at the time of the incident," and "the fight erupted to 45 to 60 man fight"]; Dkt. No. 37, Attach. 5, at ¶ 13 [Bombardier Decl., stating that "[t]he fight escalated to a 45-60 incarcerated individual brawl"]; Dkt. No. 39, Attach. 5 at 23-24, 28 [pages "21," "22," and "26" of Bombardier Depo. Tr., testifying that "there was probably anywhere from, in the neighborhood of 350 [inmates] in the yard at that time," that "there was a lot of inmates on the flats, I would say probably in the neighborhood of 200," and that "I would say there was 50 to 60 [inmates who arrived to where the four or five men were fighting]"]; *cf.* Dkt. No. 39, Attach. 8, at 26 [page "24" of Bell Depo. Tr., testifying that "Lt. Guinup informed Bell there was approximately I think 60 inmates, 50 to 60 inmates involved" in the major incident in the north yard]; Dkt. No. 39, Attach. 3, at 60 [page "59" of Plf.'s Depo. Tr., testifying that "I . . . [saw] about thirty people fighting in a mass group"].)

[6]   *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (setting forth narrow exception to rule prohibiting the rendering of credibility determinations on motion for summary judgment, which exception applies where [1] "the plaintiff . . . rel[ies] 'almost exclusively on his own testimony,'" [2] the plaintiff's "testimony . . . [is] 'contradictory or incomplete,'" and [3] the plaintiff's testimony is contradicted by evidence produced by the defense).

Granted, it is conceivable that an alternative argument of inevitability might be asserted: specifically, that, regardless of the fact that not all inmates participated in the fight, all *white* inmates (including Plaintiff) would have been forced to participate in the fight, because the Bloods were targeting them as part of their "racial war" (in Plaintiff's words) against white inmates in the yard that day.  However, even if the Court were to assume that all of the "thirty [to] forty" (again in Plaintiff's words) white inmates present in the yard at the time were among the 45 to 60 inmates involved in the fight, no admissible record evidence appears to exist establishing that, immediately upon witnessing the fight, Plaintiff could not have left the flats and gone to the remainder of the north yard where fighting indisputably did not occur.

Finally, the Court hastens to add that the aforementioned factual findings and legal conclusions are entirely tentative in nature, and their statement is intended merely to focus and make more efficient the parties' arguments during their supplemental briefing.

**ACCORDINGLY**, it is

**ORDERED** that Defendant shall have until the end of **FRIDAY, FEBRUARY 14, 2025**, by which to file the following: (1) a Supplemental Rule 56.1 Statement of no more than 15 numbered paragraphs; (2) any supporting record evidence that was not submitted during the briefing of Defendants' original motion for summary judgment; and (3) a letter-brief without a page limitation (which may incorporate by reference arguments made in his brief of February 5, 2025);[7] and it is further

---

[7]  In their letter-brief, Defendants are invited to elaborate on their arguments that no causation existed because (a) "Defendant Proulx had no authority or ability to place plaintiff in protective custody," (b) "inmates are not required to go out into the yard," and (c) "there is no evidence that [Plaintiff] was in any way targeted" during the attack before he intervened in it. (Dkt. No. 77, at 6-7, & nn.1-2.)  Defendants are also invited to brief the following two other

**ORDERED** that Plaintiff shall have until the end of **FRIDAY, FEBRUARY 21, 2025**, by which to file the following: (1) a Supplemental Rule 56.1 Response; (2) a Statement of Additional Material Facts in Dispute of no more than 15 numbered paragraphs, should he choose to file one; (3) any supporting record evidence that was not submitted during the briefing of Defendants' original motion for summary judgment; and (4) a responsive letter-brief without a page limitation (which may incorporate by reference arguments made in his brief of February 5, 2025); and it is further

**ORDERED** that Defendant shall have until the end of **WEDNESDAY, FEBRUARY 26, 2025**, by which to file a reply letter-brief without a page limitation (which may incorporate by reference arguments made in his brief of February 5, 2025); and it is further

**ORDERED** that a Decision and Order on Defendant's supplemental motion for summary judgment shall be issued without the need for oral argument (unless the parties are otherwise notified by the Court).

Dated: February 7, 2025
       Syracuse, New York

Glenn T. Suddaby
U.S. District Judge

---

issues related to causation: (d) whether any white inmates evaded involvement in the "racial war" in the yard that day; and (e) whether, nonetheless, Plaintiff could have successfully avoided the altercation by removing himself to another part of the yard.