UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD RYAN,

                                    Plaintiff,

                                                                    9:20-CV-0602
v.                                                                   (GTS/DJS)

JONATHAN PROULX,

                                    Defendant.

_____

APPEARANCES:                                         OF COUNSEL:

SUSSMAN & ASSOCIATES                        MICHAEL H. SUSSMAN, ESQ.
  Counsel for Plaintiff
P.O. Box 1005
Goshen, NY 10924

HON. LETITIA A. JAMES                          ERIN P. MEAD, ESQ.
Attorney General for the State of New York   BRITTANY M. HANER, ESQ.
  Counsel for Defendant                        Assistant Attorneys General
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this prisoner civil rights action by Richard Ryan

("Plaintiff") against New York State Department of Corrections and Community Supervision

Offender Rehabilitation Coordinator Jonathan Proulx ("Defendant"), is Defendant's

supplemental motion for summary judgment. (Dkt. No. 82.) For the reasons set forth below,

Defendant's motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Relevant Procedural History

For the sake of brevity, the Court will not recite the factual allegations giving rise to Plaintiff's remaining claim in this action (for failure-to-protect under the Eighth Amendment), or the procedural events giving rise to Defendant's supplemental motion for summary judgment, but will respectfully refer the reader to the Court's Decision and Order of February 7, 2025.  (Dkt. No. 79.)

### B.     Statement of Undisputed Material Facts

As explained below in the footnotes of this Decision and Order, the following facts were asserted and supported by citations to admissible record evidence in Defendant's Rule 56.1 Statement, and either expressly admitted or denied without the support of a citation to admissible record evidence in his Rule 56.1 Response thereto.  (*Compare* Dkt. No. 82, Attach. 2 *with* Dkt. No. 86.)  Before reciting those facts, the Court pauses to make one preliminary point.

 All but one of the denials in Plaintiff's Rule 56.1 Response cite as supporting evidence the affirmation of Plaintiff's attorney, Michael H. Sussman, Esq.  (Dkt. No. 86, at ¶¶ 1, 4, 6, 7, 8 [Plf.'s Rule 56.1 Response].)  Furthermore, it is only with great reluctance that the Court has treated as evidence the affirmation of Attorney Sussman.

The reason for this is that, of course, on a motion for summary judgment, material cited in support of a denial must be presented in a form that would be admissible at trial.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").  Generally, an attorney affirmation is not material presented in a form that would be admissible at trial.  *See* N.D.N.Y. L.R.

2

56.1(a),(b) ("The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions, and affidavits. It does not, however, include attorney's affidavits. . . .  Each denial shall set forth a specific citation to the record where the factual issue arises.") (emphasis added).  The reason for this is that, generally, an attorney lacks personal knowledge of the matters that his client relies on in opposition to a motion for summary judgment.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support . . . a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Evid. 601 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").[1]

However, here, Attorney Sussman assures the Court that, as an officer of the Court, the information he has provided "would have been in [Plaintiff's] Declaration . . . ."  (Dkt. No. 87, at

---

[1]     *See, e.g., Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("Affidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'"); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986) ("Attorneys' affidavits not based upon personal knowledge have been held not to comply with Rule 56(e) at least since Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc., 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950), a position this court has frequently reiterated . . . ."); Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986) ("The first flaw in the granting of summary judgment to defendants in the present case was the court's reliance on the materials submitted by defendants as having established the contents of the soaps provided to plaintiffs. The only affidavit submitted was that of Cream, defendants' attorney. Cream, however, did not suggest that he had personal knowledge of any of the facts he asserted."); Stephenson Equip. v. ATS Specialized, Inc., 10-CV-1517, 2013 WL 4508444, at *4 n.4 (N.D.N.Y. Aug. 23, 2013) (reminding defendants that, "with regard to the attorney affidavit submitted in support of their motion [for summary judgment] . . . , attorneys generally do not possess personal knowledge of the underlying facts sufficient to render them competent to adduce an affidavit in support of a summary judgment motion").

¶ 2 [Sussman Affirm., stating, "Accordingly, in this Affirmation and as an officer of the court, I provide that information I have from my client which would have been in his Declaration had I been able to provide it to him, review it and obtain his signature"].)  Granted, two problems impede a presumption of admissibility resulting from this assurance.

First, the Court questions the facial adequacy of Attorney Sussman's statement that Plaintiff was in fact unable to provide the testimony in question by February 28, 2025, for the reasons stated below in Part III of this Decision and Order.  Second, three highly material facts newly asserted by Attorney Sussman (i.e., that Plaintiff went to the yard that day specifically to use the phone to call his fiancé about "his fears for his safety," that he could not have removed himself to another part of the yard because corrections officers' use of tear gas in the yard "substantially affected visibility and his vision," and that his involvement in the race war was "inevitab[le]") are absent from Plaintiff's deposition testimony (and the remainder of the record on Defendant's motion for summary judgment), and/or are so unadorned by supporting detail as to be conclusory in nature.

However, the Court excuses the first problem in the interest of expediency: this case is more than three-years old and  ready for trial, and the strike at Plaintiff's facility (Groveland C.F.) appears to be ongoing (and thus any extension of the response deadline would have to be considerable).  Moreover, the Court excuses the second problem, because any inconsistency with Plaintiff's deposition testimony can be remedied through the application of *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005),[2] and because the conclusory nature of any assertions can

---

[2]        *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (setting forth narrow exception to rule prohibiting the rendering of credibility determinations on motion for summary judgment, which exception applies where [1] "the plaintiff . . . rel[ies] 'almost

be considered when evaluating the probative value of those assertions.

Having said all of that, the Court proceeds to a recitation of the undisputed material facts for purposes of Defendant's motion.

1.     Incarcerated individuals are not required to use the recreational yard at Clinton at any time, except when they wish to use the telephone.[3]

2.     Incarcerated individuals have the option of using the yard for recreation, at their own discretion, during their scheduled recreational periods.[4]

3.     At approximately 4:40 p.m. on June 11, 2019, there were approximately 346

---

exclusively on his own testimony,'" [2] the plaintiff's "testimony . . . [is] 'contradictory or incomplete,'" and [3] the plaintiff's testimony is contradicted by evidence produced by the defense).

[3]     (Dkt. No. 82, Attach. 1, at ¶ 1 [Def.'s Rule 56.1 Statement, inacurrately citing Paragraph 5 of Duquette Decl., where factual assertion is actually supported by Paragraph 6 of Duquette Decl]; *see also* Dkt. No. 82, Attach. 1, at ¶ 6 [Duquette Decl., stating, "Incarcerated individuals are not required to use the recreational yard at Clinton at any time. Rather, incarcerated individuals have the option of using the yard for recreation, at their own discretion, during their scheduled recreational periods."].)  In response, Plaintiff denies this factual assertion, stating, "[T]he only place PLAINTIFF could make phone calls was in the yard and, therefore, he was required to use the recreation yard."  (Dkt. No. 86, at at ¶ 1 [Plf.'s Rule 56.1 Response].)  Furthermore, in support of that denial, Plaintiff cites only Paragraph 3 of the Affirmation of Plaintiff's counsel, Michael H. Sussman, Esq.  (*Id*.)  Paragraph 3 of Attorney Sussman states, "Plaintiff went to the yard to use the phone to call his fiance, Ms. Erbe, with whom he had been communicating about the security issues and his fears for his safety. There was no other phone he could use within the facility. . . ." (Dkt. No. 87, at ¶ 3 [Sussman Affirm.].)  As a result, the Court has added the clause "except when they wish to use the telephone" to Defendant's originally asserted fact.

[4]     (*Compare* Dkt. No. 82, Attach. 1, at ¶ 2 [Def.'s Rule 56.1 Statement, inaccurately citing Paragraph 5 of Duquette Decl., where factual assertion is actually supported by Paragraph 6 of Duquette Decl] *with* Dkt. No. 86, at  ¶ 2 [Plf.'s Rule 56.1 Response, admitting fact].)

incarcerated individuals in the North Yard at Clinton County Correctional Facility.[5]

4.    At approximately 4:40 p.m. on June 11, 2019, a fight broke out in the North Yard at Clinton County Correctional Facility between four incarcerated individuals that escalated to a fight involving 45-60 incarcerated individuals.[6]

5.    At approximately 4:40 p.m. on June 11, 2019 Plaintiff was in the North Yard at Clinton Correctional Facility in line preparing to reenter the facility when the fight began.[7]

---

[5]    (*Compare* Dkt. No. 82, Attach. 1, at ¶ 3 [Def.'s Rule 56.1 Statement, accurately citing Paragraph 7 of Plf.'s Compl., which along with Paragraph 8 established the above-stated fact] *with* Dkt. No. 86, at ¶3 [Plf.'s Rule 56.1 Response, admitting fact].)  *See* N.D.N.Y. L.R. 7.1(a)(3) ("The record for purposes of the Statement of Material Facts includes the *pleadings* . . . .") (emphasis added); *see, e.g., Biller v. Excellus Health Plan, Inc.*, 14-CV-0043, 2015 WL 5316129, at *4 (N.D.N.Y. Sept. 11, 2015) ("Defendants may rely on admissions contained in their opponent's Amended Complaint (and/or documents attached to that Amended Complaint and thus part of it under Fed. R. Civ. P. 10[c]) to support their cross-motion.").

[6]    (Dkt. No. 82, Attach. 1, at ¶ 4 [Def.'s Rule 56.1 Statement, inaccurately citing "ECF No. 5" and "ECF No. 6," where factual assertion is actually supported by *Attachments* 5 and 6 to Dkt. No. 37]; *see also* Dkt. No. 37, Attach. 5, at ¶¶ 5-6, 10-11, 13 [Bombardier Decl.]; Dkt. No. 37, Attach. 6, at ¶ 6 [King Decl.].)   In response, Plaintiff states, "Admit that this is what the official report states, but plaintiff was not amongst the four persons originally involved in the fight."  (Dkt. No. 86, at ¶ 4 [Plf.'s Rule 56.1 Response].)  However, the partial fact denied by Plaintiff (i.e., that he was one of the four persons originally involved in the fight) was never expressly asserted by Defendant.  A Response to a Statement of Material Facts is not the means by which to dispute an arguably implied fact but the means by which to dispute an expressly asserted fact.  *See* N.D.N.Y. L.R. 56.1(b) ("The non-movant's responses shall . . . admit[] and/or deny[] each of the movant's *assertions* in matching numbered paragraphs.") (emphasis added); *see, e.g., Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (citing authority for the point of law that the summary judgment procedure involves the disputation of asserted facts, not the disputation of implied facts).  For these reasons, the above-stated fact must be, and is, deemed admitted.

[7]    (*Compare* Dkt. No. 82, Attach. 1, at ¶ 5 [Def.'s Rule 56.1 Statement, accurately citing admissible record evidence that supports the asserted fact] *with* Dkt. No. 86, at ¶ 5 [Plf.'s Rule 56.1 Response, admitting fact].)

6.    Plaintiff joined the fight in the North Yard on June 11, 2019, by attacking another

incarcerated individual.[8]

7.    Plaintiff was not attacked in the North Yard on June 11, 2019, until he ran at

another incarcerated individual and threw punches.[9]

_____

[8]    (Dkt. No. 82, Attach. 1, at ¶ 6 [Def.'s Rule 56.1 Statement, accurately citing pages 60 and 61 of Plaintiff's deposition transcript, which support the above-stated fact]; *see also* Dkt. No. 39, Attach. 3, at 61-62 [attaching pages "60" and "61" of Plf.'s Depo. Tr., stating, "Q. Do you recall witnessing another white inmate being assaulted by black inmates and then you attempting to help that inmate? A. Yes. Yeah, I – yeah. I remember seeing – I thought somebody – I thought they were going to kill him because they were hitting him with a garbage can. They – they hit him with a big iron can, and my first instinct was to help him. Q. And how did you help that inmate? A. I kind of just ran at the guy. I can't remember much after that, but I remember running after a guy with – he was about to hit him with a garbage can – or hit him with a garbage can. And I was terrified that day, so I just kind of went on instinct there. Q. Do you – A. That's all. Q. – recall striking that inmate either with a punch, kick, or other strike? A. Yeah, I'm sure that I threw some punches. Yeah. Q. And do you recall engaging physically with any other inmates other than this inmate with the garbage can? A. After that I was surrounded and jumped on so I don't – I – I· can't recall because I know I was knocked unconscious pretty soon after that. I know I was unconscious, woke up, went back to sleep in the – in medical."]; Dkt. No. 1, at ¶¶ 8-9 [Plf.'s Compl., alleging, "At about 4:40 p.m., several members of the Bloods attacked a white inmate, hitting him with a garbage can and slashing him. Plaintiff sought to assist the white inmate as approximately 40 guards were then abandoning their posts in and around the yard and failed to intervene to stop the attack."].)  In response, Plaintiff denies the above-stated fact and attempts to support that denial with a citation to pages 59 through 61 of his deposition transcript, in which (in addition to making the above-quoted statements) he states that he heard the words "racial war," saw "about thirty people fighting in a mass group," and heard the words "he's caught, racial war."  (Dkt. No. 86, at ¶ 6 [Plf.'s Rule 56.1 Response].)  Nothing in the portions of the record cited by Plaintiff dispute the above-stated fact.  Rather, at most, those portions of the record explain *why* Plaintiff joined the fight (i.e., feeling himself *compelled* to do so as a matter of *necessity* or *duty*).  Regardless of whether Plaintiff felt such a duty was moral or "associat[ional]" in nature (*see* Dkt. No. 87, Attach. 2, at 63 [attaching page "62" of Plf.'s Depo. Tr., stating the white inmate he rescued was "[m]ore of an associate. I mean, I wouldn't call him a friend"]), the duty was not legal in nature.  In any event, the Court has struck the word "voluntarily" from Defendant's original construction, because that level of detail is unnecessary under the circumstances (i.e., given that the salient fact is that Plaintiff *joined* the fight); and the Court has deemed admitted the remainder of the above-stated fact.

[9]    (Dkt. No. 82, Attach. 1, at ¶ 7 [Def.'s Rule 56.1 Statement, accurately citing pages 60 and 61 of Plaintiff's deposition transcript, which support the above-stated fact].)  In response,

8.      After Plaintiff punched another incarcerated individual on June 11, 2019, Plaintiff

sustained physical injuries.[10]

_____

Plaintiff expressly "admit[s]" the above-stated fact then states, "but plaintiff reasonably believed he would be attacked as part of the race war and had so expressed that earlier to Proulx. Moreover, the events occurring in the yard were proximate to where he was and he did not 'run' any distance to defend the inmate he believed would be killed absent intervention which no CO was providing." (Dkt. No. 86, at ¶ 7 [Plf.'s Rule 56.1 Response].)    For the sake of brevity, the Court will not linger on the fact that such an "admission" of the entirety of the above-stated fact precludes a subsequent denial of portions of that fact.  *See Maioriello v. New York State Office for People With Developmental Disabilities*, 272 F. Supp. 3d 307, 311 (N.D.N.Y. 2017) ("[T]hroughout Plaintiff's Rule 7.1 Response, she 'admits' many of the facts asserted by Defendants in their Rule 7.1 Statement but then includes additional facts and/or legal argument in those responses. . . . Where this occurs, the Court will deem those facts admitted and disregard the additional factual assertions and/or argument that Plaintiff provides in her responses."); *CA, Inc. v. New Relic, Inc.*, 12-CV-5468, 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) ("[T]he Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's] initial response in each instance is, in fact, 'Undisputed.'"); *Washington v. City of New York*, 05-CV-8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) ("[T]he statement provided by Defendants is taken as true because Plaintiff[']s initial response in each instance is 'Admit.'").  More important is the fact Plaintiff's implicit denials of what he reasonably believed and whether he "ran any great distance" are ineffective because the above-stated fact does not assert what he reasonably believed or that he "ran a great distance."  As explained above in note 6 of this Decision and Order, a Rule 56.1 Response is not the means by which to dispute a perceived implication of fact.  In any event, the Court has substituted the word "ran" for the words "chose to run" in Defendant's original construction, because that level of detail is unnecessary under the circumstances (i.e., given that the salient fact is that Plaintiff *ran at* another incarcerated individual); and the Court has deemed admitted the remainder of the above-stated fact.

[10]      (Dkt. No. 82, Attach. 1, at ¶ 7 [Def.'s Rule 56.1 Statement, generally citing Plaintiff's Complaint, Paragraphs 8, 9, 16, 17, and 34 of which support the above-stated fact].)  In response, Plaintiff denies Defendant's originally constructed fact (which asserted that Plaintiff's injuries were "[a]s a result of plaintiff's preemptive attac[k]") then states, "Plaintiff sustained injuries because of a race war which enveloped the North Yard on June 11, 2019 and would have inevitably involved plaintiff whether he attempted to assist another inmate being attacked near him or not."  (Dkt. No. 86, at ¶ 7 [Plf.'s Rule 56.1 Response].)  In support of that denial, Plaintiff cites only Paragraph 5 of the Affirmation of Attorney Sussman, Esq.  (*Id.*)  Paragraph 5 of Attorney Sussman's affirmation stated, "Plaintiff sustained injuries because of a race war which enveloped the North Yard on June 11, 2019, and would have inevitably involved him whether he attempted to assist the inmate being attacked near him or not."  (Dkt. No. 87, at ¶ 5 [Sussman Affirm.].)  For the sake of brevity, the Court will not linger on the speculative nature

C.    **Summary of Parties' Arguments**

1.    **Defendant's Memorandum of Law**

Generally, in his memorandum of law, Defendant asserts three arguments: (1) it is well settled (as recognized by numerous cases from within the Second Circuit) that, when the plaintiff was the aggressor in an altercation with another incarcerated individual, no claim for failure to protect can lie (and, indeed, some courts from outside the Second Circuit have specifically held, in failure-to-protect cases, that an inmate's act of aggression is a superseding cause of the inmate's injuries so that the defendant's conduct was not a proximate cause of those injuries); (2) here, Plaintiff's failure-to-protect claim against Defendant must be dismissed, because it is undisputed that (a) Plaintiff voluntarily joined a fight between numerous other inmates despite having an opportunity to stand aside, and (b) Plaintiff was not the victim of a violent act or targeted by other inmates; and (3) Plaintiff's argument that, even if he was not the aggressor, it was "highly probable" that he would have been injured in the yard is unsupported by the facts of the case (which establish that less than a third of the 196 inmates on the "flats," and a fraction of the 356 total inmates in the North Yard, were involved in the riot), and constitutes mere speculation, which is insufficient to satisfy his burden in opposing Defendant's motion.  (Dkt. No. 82, Attach. 3, at 5-12 [attaching pages "3" through "10" of Def.'s Memo. of Law].)

---

of this (proffered) assertion by Plaintiff.  More important is the fact that the particular allegations of Plaintiff's Complaint speak not of causation but the sequence of events.  (Dkt. No. 1, at ¶¶ 8, 9, 16, 17, and 34.)  As a result, the Court has substituted the words "After Plaintiff punched another incarcerated individual" for the words "As a result of Plaintiff's preemptive attac[k] on another incarcerated individual" in Defendant's original construction, because that level of detail is unnecessary under the circumstances (i.e., given that the salient fact is that Plaintiff was not injured *until* he joined the fight); and the Court has deemed admitted the remainder of the above-stated fact.

### 2.     Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff asserts three arguments: (1)

the Court's consideration of Defendant's supplemental motion for summary judgment is

improper, because (a) the Court raised the issue of lack of causation *sua sponte* at the final pre-

trial conference, with no advanced notice to Plaintiff, (b) the Court's solicitation of briefing on

the issue is especially improper given that Defendant's pursuit of the issue contravenes a position

that Defendant had previously intended to take at trial, and (c) Plaintiff has not had a full and fair

opportunity to oppose Defendant's motion given that Plaintiff has been unable to speak with his

counsel due to a work stoppage by corrections officers around the state including at Plaintiff's

facility (Groveland C.F.); (2) Plaintiff's conduct in going to the yard on June 11, 2019, was

reasonable and does not defeat his claim against Defendant Proulx, because (a) on the day in

question Plaintiff wished to call his fiancé Ms. Erbe and discuss with her his continuing need for

protection, (b) because the only telephones available for inmates' use at Clinton C.F. were

located in the yard, in order to use the telephone, Plaintiff had to enter the yard during recreation

hour, (c) in the yard, the telephones were located near where other white inmates congregated,

and one of Plaintiff's associates was attacked, and (d) Plaintiff reasonably expected to be

protected in the yard, which before the incident he did not have reason to believe would be more

dangerous than general population; and (3) Plaintiff's conduct in the yard does not defeat his

claim against Defendant Proulx, because (a) Plaintiff had no choice but to defend his white

associate against an attack during what Blood gang members proclaimed to be a "race war,"

given that Plaintiff reasonably believed that he and other white inmates were the next targets, (b)

Plaintiff was ultimately not disciplined in any manner for initiating a fight, (c) Plaintiff could not

have moved from the area he was located and retreat to another area (due to the use of gases in the yard at the time), and (d) the cases cited by Defendant are all distinguishable. (Dkt. No. 85, at 1-2, 5-10 [Plf.'s Opp'n Memo. of Law].)

### 3.    Defendant's Reply Memorandum of Law

Generally, in his reply memorandum of law, Defendant asserts four arguments: (1) with regard to the purported impropriety of Defendant's supplemental motion, contrary to Plaintiff's argument, Defendant did not seek (in his motions *in limine*) to preclude any reference related to what happened in the yard, but merely evidence related to dismissed claims (namely, the facility's response to the riot on June 11, 2019), and indeed in his reply Defendant specifically conceded that evidence as to how the injury occurred should be permitted, as well as evidence of who caused the injury, as such clearly goes to the necessary element of causation; (2) the fact that Plaintiff was not disciplined for his actions in the yard in no way establishes the elements of his failure-to-protect claim, or insulates that claim from dismissal; (3) Plaintiff's opposition fails to cite to any case permitting a failure-to-protect claim to proceed when, as here, the plaintiff inserted himself into the fight; and (4) this is not a situation where evidence exists that the plaintiff was defending himself, as in *Constant v. Prack*, 16-CV-03985, 2022 WL 917528, at *8 (S.D.N.Y. Mar. 29, 2022), because in *Constant* evidence supported a version of events in which the plaintiff had been attacked while playing cards in the yard, while here no evidence supports a version of events in which Plaintiff had been attacked while in the yard. (Dkt. No. 88, at 3-5 [attaching pages "1" through "3" of Def.'s Reply Memo. of Law].)

## II.    GOVERNING LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there

is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[11] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. Anderson, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

## III.   ANALYSIS

After carefully considering the matter, the Court grants Defendant's motion for the reasons stated by him in his memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. To those reasons, the Court adds the following analysis (which is intended to supplement, and not supplant, Defendant's reasons).

---

[11]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg*., 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

One of the elements of a prisoner's failure-to-protect claim under the Eighth Amendment and 42 U.S.C. § 1983 is the requirement that the defendant's constitutional violation was the *proximate cause* of the injuries sustained by the plaintiff.  *See* Kevin F. O'Malley, Jay E. Grenig & William C. Lee, 3B *Federal Jury Practice and Instructions* § 165.20 Essential Elements of Plaintiff's Claim: Generally (6th ed. West 2025) (listing the third element of a claim under 42 U.S.C. § 1983 as that the "officers' acts were the proximate cause of damages sustained by plaintiff"); *Burton v. Lynch*, 664 F. Supp.2d 349, 361 n. 17 (S.D.N.Y.2009) ("To find a defendant liable in a § 1983 action, the defendant must be the proximate cause of the constitutional violation alleged. This entails that a plaintiff must allege facts which, if taken as true, would demonstrate that the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct.") (internal citations omitted); *see, e.g., Justin R. ex rel. O'Toole v. Bloise*, 06-CV-6228, 2011 WL 4684359, at *7 (S.D.N.Y. Oct. 5, 2011) ("[T]he Court finds that there are no facts in the record to support the causation element of Plaintiff's § 1983 claim[] for failure to protect . . . .").[12]

An inmate may not prevail on a failure-to-protect claim when it is undisputed that he *joined the fight* giving rise to his injuries.  *See Chadwick v. Mondoux*, 05-CV-0975, 2007 WL 2891655, at *6 (N.D.N.Y. Sept. 28, 2007) (Sharpe, J.) (finding that plaintiff was "the aggressor," so as to preclude his failure-to-protect claim under the Eighth Amendment, because "[t]he May 22, 2005 altercation did not involve plaintiff until he *joined the fight* when he saw inmate Adams

---

[12]     The other two elements of such a failure-to-protect claim (which regard the underlying constitutional violation) are as follows: "(1) [the plaintiff] was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials exhibited deliberate indifference to that risk."  *Louis-Charles v. Courtwright*, 11-CV-0147, 2014 WL 457951, at *6 (N.D.N.Y. Feb. 4, 2014) (Sharpe, J.) (citing Farmer v. Brennan, 511 U.S. 825, 837 [1994]).

being kicked. Thus, plaintiff was an aggressor during the first altercation, and Mondoux could

certainly not have been aware of any 'risk' to plaintiff at that time") (emphasis added); *cf. Pecuch*

*v. Platt*, 13-CV-6102, 2015 WL 6505109, at *3 (W.D.N.Y. Oct. 27, 2015) (granting defendants'

motion for summary judgment on plaintiff's failure-to-protect claim, because "undisputed video

evidence shows that Plaintiff *instigated the violence by* walking up to White and punching him in

the face") (emphasis added); *Williams v. Salvucci*, 20-CV-5098, 2022 WL 17586326, at *2, 9

(S.D.N.Y. Dec. 12, 2022) ("Video of the incident . . . reveals that Melendez had started to go up

the stairs, but when another inmate coming down blocked his way, he backed down the stairs and

onto the lower tier. . . .  Plaintiff continued down the stairs and punched Melendez, and

Melendez began punching back at Plaintiff. . . .  Plaintiff could hardly be heard to complain that

Defendants failed to protect him from the fight *he sought out*.") (emphasis added).

This is so even if the inmate joined the fight as a *preemptive* attack.  *See Easley v.*

*Loverme*, 18-CV-6326, 2020 WL 2557809, at *2, 9 (W.D.N.Y. May 20, 2020) (finding that

plaintiff was "the aggressor" during the incident that occurred on October 30, 2017, so as to

preclude his failure-to-protect claim under the Eighth Amendment, because "the Complaint

clearly indicates that it was Plaintiff who attacked Kamholtz at the A.A. meeting. In this regard,

the written statement by Jail Administrator Crowell, which is attached to the Complaint, refers to

an admission by Plaintiff that he made a *preemptive attack* against Kamholtz because he felt

outnumbered [by opposing gang members]") (emphasis added).

Here, no arguments asserted in Plaintiff's opposition memorandum of law cause the

Court to disagree with Defendant's two alternative reasons in favor of his motion for summary

judgment: (1) Plaintiff's choice to enter the yard on June 11, 2019; and (2) his choice to enter the

fray in the yard that day.

Regarding the first argument asserted in Plaintiff's opposition memorandum of law (i.e., that the Court's consideration of Defendant's supplemental motion for summary judgment is improper), the Court rejects Plaintiff's assertion that, before the final pretrial conference, Plaintiff had no advanced notice of the issue of whether he was the aggressor during the incident that caused his injury.  As the Court explained in its Decision and Order of February 7, 2025 (Dkt. No. 79, at 2, n.1), in Defendants' prior motion for summary judgment, Defendants King and Bombadier argued as follows: "Plaintiff's own undisputed testimony indicates that he impulsively ran towards the melee, and inserted himself into the donnybrook to assist an 'associate' of his who was being attacked. . . . Plaintiff alleges that while he was assisting this individual, he was surrounded and attacked by multiple incarcerated individuals. . . . Plaintiff fought back by throwing punches at incarcerated individuals. . . ."  (Dkt. No. 37, Attach. 1, at 11 [page "9" of Defs.' Memo. of Law] [record citations omitted].)  Indeed, Defendants' Statement of Fact Numbers 46 and 47 asserted as follows: "Plaintiff impulsively ran towards the melee to assist an 'associate' of his who was being attacked. See Ryan Dep. 60:14-61:2; 62:8-11; 62:21-63:3. Plaintiff alleges that while he was assisting this individual, he was surrounded and attacked by multiple incarcerated individuals. See Ryan Dep. 59:14-19; 60:6-20." (Dkt. No. 37, Attach. 2, at ¶¶ 46-47 [Defs.' Rule 56.1 Statement].)  In any event, the Court provided Plaintiff fair notice of the issue on February 7, 2025.  (Dkt. No. 79.)

The Court also rejects Plaintiff's related assertion the Court's solicitation of briefing on the issue of causation is especially improper given that Defendant's pursuit of the issue contravenes a position that Defendant had previously intended to take at trial.  In addition to the

response offered by Defendant (i.e., that, in fact, he never intended to preclude any reference related to what happened in the yard), the Court relies on the above-stated assertions and arguments in Defendants' prior motion for summary judgment (discussed in the preceding paragraph of this Decision and Order).

The Court also rejects Plaintiff's assertion that he has not had a full and fair opportunity to oppose Defendant's motion given that he has been unable to speak with his counsel due to a work stoppage by corrections officers around the state including at his facility (Groveland C.F.). The Court notified Plaintiff's counsel on February 7, 2025, of Plaintiff's need to adduce admissible record evidence regarding causation in opposition to Defendant's supplemental motion for summary judgment.  (Dkt. No. 79, at 8, n.7 [Decision and Order filed Feb. 7, 2025, stating that, in their supplemental motion for summary judgment, "Defendants are invited to elaborate on their argument[] that no causation existed because . . . 'inmates are not required to go out into the yard' . . .".])  Indeed, Plaintiff's counsel admits that he solicited the information contained in his affirmation during two telephone calls made to Plaintiff between the Final Pretrial Conference on February 4, 2025, and the filing of Defendant's supplemental motion for summary judgment on February 14, 2025.  (Dkt. No. 87, at ¶ 2 [Sussman Affirm.].)  As a result, Plaintiff's counsel had a full and fair opportunity to obtain the needed admissible record evidence *before* Defendant filed his supplemental motion for summary judgment on February 14, 2025.

Alternatively, Plaintiff's counsel had a full and fair opportunity to obtain this testimony from Plaintiff *after* February 14, 2025, despite the occurrence of a recent prison strike at Plaintiff's facility (Groveland C.F.).  (Dkt. No. 83 [Plf.'s deadline-extension request, stating that counsel would "go see Mr. Ryan on Tuesday [February 25, 2025] . . ."].)  For the sake of brevity,

the Court will not linger on the fact that (1) the strike at Groveland C.F. does not appear to have started until February 18, 2025,[13] four days after Defendant filed his supplemental motion, and (2) Plaintiff's counsel does not swear specifically that, during this four-day period, he tried but was unable to call Plaintiff, but merely that he experienced such an inability *after* the strike began. (*Cf.* Dkt. No. 87, at ¶ 2 [Sussman Affirm., stating that "since that [second] call [before February 14, 2025] we have been unable to arrange either another call or a visit *because of the labor issues at Groveland CF*"].) [emphasis added]. More important is the fact that conspicuously absent from Attorney Sussman's affirmation is any statement that he tried unsuccessfully to *mail* communications to Plaintiff between February 14, 2025, and February 28, 2025, or (more importantly) that Plaintiff tried unsuccessfully to *send* mail to Attorney Sussman (e.g., including the necessary declaration under 28 U.S.C. § 1746) between February 14, 2025, and February 28, 2025. (*Cf.* Dkt. No. 87, at ¶ 2 [Sussman Affirm., stating only that Plaintiff was unable to *receive* mail *before* February 14, 2025].)

In any event, the Court has treated as evidence the affirmation of Attorney Sussman, for the reasons stated above in Part I.B. of this Decision and Order. As a result, Plaintiff has had a full and fair opportunity to be heard on Defendant's motion.

---

[13]     Under Fed. R. Evid. 201, the Court takes judicial notice of newspaper articles reporting that the strike at Groveland C.F. did not begin until Monday, February 17, 2025. *See, e.g.,* Brendan J. Lyons, "Correction officer strikes grow to multiple prisons," The Times-Union (Albany, NY) (Feb. 18, 2025) ("By late Monday afternoon, sources said another strike was unfolding at Groveland Correctional Facility in Livingston County as well as solidarity protests outside several prison facilities in the North Country . . . ."); Sol Hauser and Alyssa Hill, "Corrections strike continues in Groveland," *Livingston County News* (Feb. 26, 2025) ("Corrections officers maintained their strike for a second week at Groveland Correctional Facility and dozens of other state prisons across New York . . . . The strikes, which began last Monday, expanded this week as the weather warmed. . . .").

Regarding Plaintiff's second argument (i.e., that his conduct in going to the yard on June 11, 2019, was reasonable and does not defeat his claim against Defendant Proulx), the Court rejects Plaintiff's assertion that he was *required* to go to the yard that day. No facility rule compelled Plaintiff to go to the yard that day. *See, supra,* Part I.B. of this Decision and Order (specifically, Statements of Fact Nos. 1 and 2). Furthermore, prisoners do not possess a constitutional right to not miss recreation or to make a telephone call on a single occasion (or even a few occasions). *See McCray v. Lee*, 963 F.3d 110, 117 (2d Cir. 2020) ("[D]eprivations of physical exercise for short periods will not rise to constitutional dimension . . . ."); *Torrez v. Semple*, 17-CV-1232, 2018 WL 2303018, at *5 (D. Conn. May 21, 2018) ("Courts have held that inmates have no constitutional right to use the telephone without restrictions.") (collecting cases).

Granted, prisoners possesses a constitutional right to complain about their safety. However, he Court rejects Plaintiff's assertion (in his opposition memorandum of law) that on the day in question he went to the yard to use the phone to call his fiancé Ms. Erbe *and discuss with her his continuing need for protection.* Attorney Sussman's affirmation contains no such statement, but states merely that, *in the past*, Plaintiff had discussed security issues and his safety with Ms. Erbe. (Dkt. No. 87, at ¶ 3 [Sussman Affirm., stating, "Plaintiff went to the yard to use the phone to call his fiancé, Ms. Erbe, *with whom he had been communicating about the security issues and his fears for his safety*. . . ."] [emphasis added].) Furthermore, Plaintiff's deposition transcript contains no such testimony. (*See generally* Dkt. No. 87, Attach. 2, at 28 [attaching page "27" of Plf.'s Depo. Tr.].) All that a rational fact finder is left with is *speculation* regarding why Plaintiff wanted to call his fiancé on June 11, 2019.

As a result, the Court finds it undisputed that Plaintiff was not *required* to enter the yard

on June 11, 2019 – particularly given that he had notice that members of the Blood gang congregated there, that a white associate of his had recently been attacked there by members of the Blood gang regarding the giving of bad alcohol, and that more violence would ensue again any day.[14]  Simply stated, the decision by Plaintiff to enter the yard on June 11, 2019, broke the alleged chain of causation between Defendant's alleged failure to have Plaintiff placed in voluntary protective custody before June 11, 2019, and the injury that Plaintiff sustained in the yard on June 11, 2019.

Regarding Plaintiff's third argument (i.e., that his conduct in the yard does not defeat his

---

[14]     (Dkt. No. 87, Attach. 2, at 26-37 [attaching pages "25" through"36" of Plf.'s Depo. Tr., testifying that "there was going to be a big problem" and "there was going to be a fight"].)  The Court notes that any assertion by Plaintiff that he was in no more danger in the yard than in the interior of the facility is pure speculation.  (*Cf.* Dkt. No. 87, at ¶ 3 [Sussman Affirm., stating, "He *felt* as unsafe within the facility as in the yard and violent incidents had occurred in both places before June 11, 2019"] [emphasis added].)  Moreover, the speculative nature of such an assertion is no way cured by Plaintiff's reliance on his vague and conclusory assertion that "violent incidents had occurred in both places [i.e., within the facility and in the yard] before June 11, 2019": it is wholly unspecified in the record what violent incident(s) *within* the facility Plaintiff is (belatedly) referring to.  In contrast, it is undisputed that (1) "[s]omewhere between three and four days before" the incident on June 11, 2025, his white associate had been attacked *in the yard* by members of the Blood gang regarding the giving of bad alcohol, and (2) Plaintiff was relying *solely* on that incident when he formed his belief that "there was rising tensions or an increased risk of violence . . . prior o June 11th, 2019."  (Dkt. No. 87, Attach. 2, at 29, 30, 33 [attaching pages "28," "29," and "32" of Plf.'s Depo. Tr.].)   Regarding this last undisputed fact, it must be remembered that a party opposing a motion for summary judgment may not rely on a post-deposition affidavit that contradicts the affiant's deposition testimony without amplification or explanation.  *See Hayes v. New York City Dept. of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A]n affidavit . . . that, by omission or addition, contradicts the affiant's previous deposition testimony [is insufficient to create a genuine issue of fact].");  *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) ("The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony.");  *Mack v. U.S.*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment.");  *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985) ("This sworn admission . . . could not later be contradicted for the purpose of creating an issue of fact . . . .").

claim against Defendant Proulx), the Court rejects Plaintiff's assertion that he had no choice but to defend his white associate against an attack during what Blood gang members proclaimed to be a "race war," given that Plaintiff reasonably believed that he and other white inmates were the next targets. They Court rejects this late-blossoming assertion (that he attacked another inmate because an attack against him was inevitable) for each of two alternative reasons.

First, such a assertion is both (a) contradicted by his prior deposition testimony and Complaint (which asserted and alleged that he attacked the other inmate merely in order to *defend* a white associate who was about to be attacked),[15] and (b) wholly unsupported by the other record evidence. As a result, such testimony may be, and is, disregarded under *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). *See, supra,* note 2 of this Decision and Order.

Second, in any event, any such belief (that an attack against Plaintiff was inevitable, while he stood peacefully in line waiting to renter the facility along with the other members of his housing unit) is pure speculation. In fact, it is undisputed that, of the approximately 356 inmates were in the North Yard at the time in question, only 45-60 incarcerated individuals were involved in the altercation. *See, supra,* Part I.B. of this Decision and Order (specifically,

---

[15]    (*See* Dkt. No. 39, Attach. 3, at 61 [Ryan Depo. Tr., stating, "Q. Do you recall witnessing another white inmate being assaulted by black inmates and then you attempting to help that inmate? A. Yes. Yeah, I – yeah. I remember seeing – I thought somebody – I thought they were going to kill him because they were hitting him with a garbage can. They – they hit him with a big iron can, and *my first instinct was to help him*. Q. And how did you help that inmate? A. I kind of just ran at the guy. I can't remember much after that, but I remember running after a guy with -- he was about to hit him with a garbage can – or hit him with a garbage can. And I was terrified that day, so I just kind of went on instinct there."]; Dkt. No. 1, at ¶¶ 8-9 [Plf.'s Compl., alleging, "At about 4:40 p.m., several members of the Bloods attacked a white inmate, hitting him with a garbage can and slashing him. Plaintiff *sought to assist the white inmate* as approximately 40 guards were then abandoning their posts in and around the yard and failed to intervene to stop the attack." [emphasis added].)

Statements of Fact Nos. 3 and 4). It is also undisputed that Plaintiff was not attacked and injured

until he ran at another incarcerated individual and threw punches. *See, supra,* Part I.B. of this

Decision and Order (specifically, Statements of Fact Nos. 7 and 8). Simply stated, even if

admissible record evidence exists that Plaintiff was *required* to enter the yard that day, it is

undisputed that his decision to enter the fray (because of his "associat[ion]" with a white inmate

during a "racial war") broke the alleged chain of causation between Defendant's alleged failure

to have Plaintiff placed in voluntary protective custody before June 11, 2019, and the injury that

Plaintiff sustained in the yard on June 11, 2019.

Finally, the Court rejects Plaintiff's reliance on the fact that he was ultimately not

disciplined in any manner for initiating a fight. In addition to the response offered by Defendant,

the Court relies on the fact that the lack of a disciplinary conviction of an inmate for initiating a

fight (which, of course, could be based on a discretionary discontinuation or settlement of such a

charge as much as a lack of evidence at the time) is of no probative value to a subsequent failure-

to-protect claim by the inmate under Fed. R. Evid. 401 when that inmate has admitted, in civil

litigation, that he joined an *existing* fight (and was not injured until he did so).[16] Here, of course,

it is undisputed that (1) Plaintiff joined the fight in the North Yard on June 11, 2019, by attacking

another incarcerated individual, and that (2) Plaintiff was not attacked and injured in the North

_____

[16]    *Cf. Davis v. New York*, 75 A.D.3d 1022, 1022-23 (N.Y. App. Div., 3d Dep't
2010) ("Regardless of whether petitioner's assertion [that the Hearing Officer should have
recused himself due to a conflict of interest] is true, we find it irrelevant to the determination of
guilt, particularly where petitioner admitted to initiating the fight with his cell mate."); *U.S. v.
Price*, 05-CV-0492, 2009 WL 973370, at *2 (E.D.N.Y. Apr. 10, 2009) ("The fact that Defendant
was not previously charged or convicted of any offense relating to his possession of the Gun in
2001 has no bearing on the issue before the court."); *U.S. v. Odom*, 03-CV-1201, 2004 WL
1179309, at *5 (S.D.N.Y. Apr. 30, 2004) (" The fact that Mr. Marrero was never charged with
the heroin possession is irrelevant to the issue of probable cause.").

Yard on June 11, 2019, until he ran at that other incarcerated individual and threw punches.

*See, supra,* Part I.B. of this Decision and Order (specifically, Statements of Fact Nos. 5, 6 and 7).

For all of these reasons, the Court grants Defendant's supplemental motion for summary judgment.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's supplemental motion for summary judgment (Dkt. No. 82) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**; and it is further

**ORDERED** that the Clerk of Court shall issue a Judgment for Defendants and close this action.

Dated: March 14, 2025
       Syracuse, New York

                                   Glenn T. Suddaby
                                   U.S. District Judge